## TRADERS & GENERAL INS. CO. v. KINCAID et al.

### No. 4875.

Court of Civil Appeals of Texas. Amarillo.

April 18, 1938.

Rehearing Denied May 16, 1938.

Lightfoot, Robertson, Saunders & Gano, of Fort Worth, and T. R. Boone and Kearby Peery, both of Wichita Falls, for Traders & General Ins. Co.

E. W. Napier, of Wichita Falls, and Berry, Warlick & Bunnenberg, of Vernon, for Elizabeth Kincaid et al.

FOLLEY, Justice.

On March 21, 1936, this court affirmed this case by a written opinion of that date. The plaintiff in error has filed a motion for rehearing and, upon careful consideration of the same, we are of the opinion that we were in error in some of our conclusions. The original opinion is withdrawn and the following opinion substituted.

This is a compensation case brought by Elizabeth Kincaid, surviving wife of Curtis Kincaid, deceased, for herself and minor children, against the Traders & General Insurance Company in the form of an appeal from the Industrial Accident Board. The parties shall carry their trial court designation.

The plaintiffs alleged that on or about May 9, 1935, Curtis Kincaid was employed as a laborer by Combs & Glade, who were general contractors and subscribers of the defendant insurance company. The deceased had been in such employment for about one month prior to May 9, 1935. On this day he went to work about 2 o'clock in the afternoon shoveling bulk cement out of a box car, and worked until about 5 p. m. Plaintiffs further alleged, and offered evidence tending to prove, that during such time the deceased inhaled an extraordinary amount of cement dust and suffered a heat stroke, both of which injuries contributed to his death. It was uncontroverted that the deceased contracted lobar pneumonia immediately after his injury and died one week later, May 16, 1935.

The defendant answered by general demurrer and general denial and further pleaded that the death of the deceased resulted solely from physical diseases and infections.

In submitting the case to the jury the plaintiffs abandoned their theory that inhaling cement dust had caused the death of the deceased, and only issues relative to heat stroke were submitted to the jury. The first of these issues, and the instruction given in connection therewith, form the basis of the chief complaint of the defendant. The issue in question was as follows: "Do you find from a preponderance of the evidence that the deceased, Curtis Kincaid, sustained a heat stroke, as that term is defined herein, on or about the 9th day of May, 1935?"

This issue was answered in the affirmative by the jury. To assist the jury in answering this issue the court gave the following instruction: "You are instructed that the term 'heat stroke' *as used in this charge* shall be construed to mean damage or harm to the physical structure of the body and such diseases and infections as naturally result therefrom." (Italics ours.)

Other issues not material to our discussion were submitted and answered by the jury in favor of plaintiffs' recovery. Upon such verdict the court rendered judgment for the plaintiffs, from which judgment the defendant has appealed to this court.

The defendant, in several assignments, attacks the judgment of the trial court because of the definition of "heat stroke" as given by the court. The defendant asserts that such definition instructed the jury that "heat stroke" and "injury" are one and the same thing, that such definition does not exclude from the consideration of the jury injuries other than a heat stroke, and the finding of the jury, in the light of such definition, is not only deficient in sustaining plaintiffs' theory of a heat stroke but is just as conclusive that the deceased died from inhaling cement dust or from some other injury, even though the plaintiffs had elected to stand solely upon the theory of heat stroke.

After further consideration of the defendant's contention in this respect, we have reached the conclusion that there is more merit in such contention than we realized in our former opinion. It is apparent that the trial court, in defining "heat stroke," used the language of the statute, substituting the words "heat stroke" for the word "injury." Such a substitution, upon casual examination, would appear harmless for the reason that no one would question the fact that a "heat stroke" was damage or harm to the physical structure of the body, but the vice of the present situation appears more obviously upon a transposition of the language of the definition so that the object becomes the subject of the sentence. So transposed, the definition resolves itself into this instruction: "You are instructed that any damage or harm to the physical structure of the body, and such diseases and infections as naturally result therefrom, *as used in this charge,* constitute a 'heat stroke.'"

As applied to the facts in this case, the definition given by the court and the trans-

position thereof become a paradox similar to this: "Since the horse is an animal, animals are horses."

The latter quotation might be a true statement if the horse was the only animal in existence. So in the instant case would the transposed definition be less harmful if only one injury had been pleaded and proved by the plaintiffs. But such is not the case. Until this cause was submitted to the jury the plaintiffs were asserting two distinct and specific injuries, either of which would have been a separate ground of recovery. By abandoning the injury produced by the inhaling of cement dust, the plaintiffs had no right to a recovery under such theory. Ormsby v. Ratcliffe, 117 Tex. 242, 1 S.W.2d 1084; Travelers' Ins. Co. v. Washington, Tex.Civ.App., 5 S.W.2d 783. By analyzing the answer to the above issue, in the light of the definition, it is entirely possible that the recovery herein was for an injury by the deceased's inhaling cement dust or for some other damage or harm upon which the plaintiffs did not rely. There could be no question that the inhaling of cement dust would produce damage or harm to the physical structure of the body. The court, in effect, instructed the jury that such damage or harm, not in any other instance possibly, but "as used in this charge," was a "heat stroke." Then, in asking if the deceased sustained a heat stroke, the court, in effect, asked the jury if the deceased sustained any damage or harm to the physical structure of the body. The response to the issue might amount to no more than a finding that the deceased suffered some damage or harm to the physical structure of his body. It may have been a heat stroke, it may have been an injury from inhaling cement dust, or it may have been some injury formulated in the minds of the jury by deduction from all the testimony before them. The seriousness of the situation in this case is aggravated by the fact that the deceased actually died from the effects of lobar pneumonia, which the testimony showed could have arisen from either of the two injuries pleaded by the plaintiffs, and the definition given does not make certain the causal connection between the injury relied upon and the subsequent death of the deceased. The definition certainly does not exclude injuries upon which the plaintiffs were not relying, and is so worded that we cannot arbitrarily say that no harm arose from such definition. To say the least, such a state of the record

creates such an uncertainty as to what may have been found by the jury in response to the issue that we are of the opinion that the definition of "heat stroke," as given in this case presents reversible error. Commercial Standard Ins. Co. v. Noack, Tex. Com.App., 62 S.W.2d 72; Zurich General Accident & Liability Ins. Co., Limited, v. Wood et al., Tex.Civ.App., 27 S.W.2d 838; Osceola Oil Co. et al. v. Stewart Drilling Co. et al., Tex.Com.App., 258 S.W. 806; Guitar Trust Estate v. Keith, Tex.Com. App., 45 S.W.2d 190; Maryland Casualty Co. v. Rogers et al., Tex.Civ.App., 86 S.W. 2d 867.

We have carefully reviewed the other assignments of error, and we are of the opinion that, as presented, they are without merit. Since such alleged errors will likely not occur in the same manner, if at all, upon another trial of this case, we deem it unnecessary to discuss them.

For the reasons stated, the defendant's motion for rehearing is granted, the judgment of this court heretofore rendered is set aside, and the judgment of the trial court is reversed and the cause remanded.